THE PEOPLE, on the relation of McSpedon & Baker, *vs.*
HAWS, Comptroller of the city of New York.

Whether the legislature had, or had not, the constitutional power, originally, to appoint the commissioners of records for the city and county of New York, under whose direction and superintendence certain work has been done, yet the work having been performed, and the legislature determining that the same was a service rendered to the county, they had the right to tax that portion of the state to pay for it.

Although the legislature cannot authorize the taking of the property of an individual, for public purposes, without compensation, or for private purposes with or without compensation, yet it has the absolute power to determine what sums shall be raised by taxation, and the purposes to which they shall be applied.

It can apportion the public burthens among all the tax paying citizens of the state, or among those of a particular section or territorial division.

Where the legislature has deemed it proper to determine that certain work performed by individuals, for a county, is for the public good, and, without any reference to the mode by which they are authorized to enter upon the performance of the work, it has enacted that they shall receive compensation for it, and has taxed the inhabitants of the county for that purpose, it is not a ground of objection that the legislature has not declared the precise amount of the claim, if it has specified a maximum amount of compensation, and has indicated the method by which the actual amount due shall be ascertained.

The legislature, by the 6th section of the act of April 17, 1860, empowered the board of supervisors of the county of New York to cause to be raised and collected a sum not exceeding $80,000, to meet and pay whatever sum, up to that amount, might be found due to the contractors with the commissioners of records; and authorized the comptroller " to pay said amount when the same " should " be judicially determined." *Held* 1. That the legislature did not intend, by the terms "*judicial determination*," a determination by *action* commenced against the board of supervisors, and a judgment recovered in it, before the comptroller should pay the amount; inasmuch as such a remedy did not exist, in favor of the contractors.

2. That the contractors could have no judicial determination, except in a proceeding by mandamus; and that in the absence of any specific directions in the act, as to the manner of that determination, it would be unreasonable to infer that any other mode was intended than that attainable by mandamus.

3. That the proper remedy of the contractors, upon the refusal of the comptroller to pay them the amount certified by the commissioners of records to be due to them, was by mandamus.

There can be an appeal only from a *final judgment*.

Whenever a case is referred, at a special term, even when the order of refer-

ence settles all the essential points at issue, it is nothing but an interlocutory order; and no *final* judgment can be entered until the coming in of the report. If the party appeals from the order of reference, the appeal will be dismissed.

ON the 13th of April, 1855, the legislature passed an act appointing commissioners to arrange the public records in New York, and have indexes made and printed; and providing that "the necessary expenses incurred by them shall be paid by the county treasurer, upon the certificate of said commissioners; and the supervisors of said city and county are hereby authorized to raise by tax the amount required to defray the same." (*Laws of* 1855, *p.* 762.) Pursuant to the statute, the commissioners, on the 15th of November, 1855, made a contract with the relators to make and print indexes of the records in the register's office. The relators entered upon the work, and have nearly completed the contract. They have received several sums in payment, which the defendants have raised in different years. The relators obtained from the commissioners, at sundry times between October, 1858, and July, 1860, certificates under the contract, amounting to $58,957.37. On the 17th of April, 1860, the legislature passed an act, containing, among other things, a provision in the following words: "The said board of supervisors are hereby empowered to cause to be raised and collected, in manner as aforesaid, the further sum not exceeding $80,000, to meet and pay whatever sum, up to that amount, as may be found due to the contractors with the commissioners of records of the city and county of New York. *The comptroller is authorized to pay said amount when the same shall be judicially determined.*" On the 22d of May, 1860, the commissioners of records certified to the comptroller and the board of supervisors, that there was due to the contractors, for work under said act of 1855, the sums of $65,873.51, $1953, $1645.43, and $2562.32, and required said board of supervisors to cause said sums to be raised, pursuant to the said acts of 1855 and 1860, which the board

The People *v.* Haws.

of supervisors, up to the 26th of July, 1860, neglected and refused to raise.

Whereupon such proceedings were had, that on the 10th day of September, 1860, a mandamus issued out of this court, commanding the supervisors to raise said sums of money as in said acts specified. And thereupon the said supervisors raised the sum of $72,000 for that pupose, which has been collected. On the 14th day of November, 1860, the certificates obtained by the relators from the commissioners of records, pursuant to the contract, were presented to the defendant, as comptroller of the city, and he was requested to draw his warrant for the same, but refused to do so, and gave, as his only reason for such refusal, that the same had not been judicially determined. Thereupon a motion was made for a mandamus, commanding him to draw his warrant. Judge Sutherland, at special term, made an order granting the motion, and adjudging that the *judicial determination,* mentioned in the 6th section of the act of April 17, 1860, could properly be had in this proceeding. The order also referred the matter to Hon. B. W. Bonney, to ascertain and report whether the amount claimed by the relators, and demanded of the comptroller, was actually due and owing to them for services actually performed under a contract or contracts made with the commissioners of records for the city and county of New York, as stated in the papers on which they applied for said writ of mandamus. The order also provided that upon the coming in and confirmation or modification of the report, a peremptory writ of mandamus issue, &c. From which order the defendant appealed to the general term.

*Greene C. Bronson, A. R. Lawrence, Jr.* and *H. H. Anderson,* for the appellant. I. This application is based upon the provisions of the act of April 17th, 1860, entitled "An act to enable the supervisors of the county of New York to raise money by tax." (*Laws of* 1860, *p.* 1024, § 6.) And

to entitle the relators to a mandamus, they must show that, under the provisions of that act, it was the *duty* of the appellant, at the time of the demand referred to in the relators' affidavit, to draw his warrant in favor of the relators for the amounts in said affidavit mentioned. (1.) The meaning of the sixth section of the act of April 17, 1860, was determined by this court in the case of the *People ex rel. Wetmore and others, commissioners of records,* v. *The Board of Supervisors,* (11 *Abbott,* 114.) In that case the court held that the words "when the same shall be judicially determined," as used in the sixth section of that act, "must be held to refer to the judicial determination of the constitutionality of the act of April 13th, 1855, (the act creating the commissioners of records,) or, at all events, to the judicial determination of some question or questions other than as to the *amount* due for work done under the contracts." (*Opinion of Sutherland, J.,* 11 *Abbott,* 118.) It is then incumbent on the relators to show that such determination had been had at the time the demand aforesaid was made.

II. There has been *no judicial determination* of the matters required by the act of April 17th, 1860, to be judicially determined, before the comptroller of the city of New York should be authorized or obliged to pay any amount on contracts made by the commissioners of records. (1.) There is no pretense, in the affidavit of the relators, that there has been any judicial determination of those matters. (2.) And it distinctly appears that the respondent places his refusal to comply with the demands of the relators upon the ground that such judicial determination has not been had.

III. The remedy by mandamus is a purely legal remedy, and a party is not entitled thereto, unless he has *a clear legal right* to demand what is asked for in his writ. (*People* v. *Suprs. of Chenango Co.,* 1 *Kernan,* 563. *People* v. *Canal Board,* 13 *Barb.* 444. *People* v. *Suprs. of Greene Co.,* 12 *id.* 217. *People* v. *Corp. of Brooklyn,* 1 *Wend.* 324. *Crary on Spec. Proceedings,* 272.) (1.) As has been above shown,

there is *no duty* imposed upon the appellant, as comptroller, to pay any amount on contracts made by the commissioners of records, *until the judicial determination* contemplated by the act of 1860 has been had ; and it follows, of course, that the relators have *no legal right* to demand such payment in the absence of such a determination.

IV. Neither can it be said that the relators can obtain the judicial determination contemplated by the act of 1860, and a payment by the respondent of their alleged claim in the same proceeding, for these reasons : (1.) The act of 1860 peremptorily provides that the judicial determination shall be complete and final, before the duty of the comptroller shall attach. (*Laws of* 1860, *ch.* 509.) (2.) The right to a mandamus must be in esse at the time the proceedings to obtain the writ are initiated, and therefore it is impossible in one and the same proceeding to *establish the right and enforce it.* (*See remarks of Savage, Ch. J., in People* v. *Corporation of Brooklyn,* 1 *Wend.* 324.). (3.) It being clear that the judicial determination, under the act of 1860, must precede the obligation of the comptroller to pay, it follows that the respondents had no legal right to demand that the appellant should draw his warrant for the sum in question, until such judicial determination had been had. It is an elementary rule, that a mandamus will not be granted unless the application has been preceded by a distinct demand of the specific thing to compel the performance of which is the object of the mandamus, and by a refusal of performance or conduct equivalent to it. (2 *Ad. & Ellis,* 477. 3 *id.* 217.) Now, as it appears that the respondents were not authorized to make such a demand, at or prior to the time when this proceeding was initiated, the court was not authorized to make the order at the special term.

V. The order of January 18th, 1861, was improperly granted. (1.) The court has no power to order a reference in a proceeding to obtain a mandamus. The provisions of the code in relation to referring actions are not applicable to

proceedings of this nature. (*Code*, § 471.). (2.) There can be found no authority in any book of practice for such an order, and it is entirely antagonistic to the elementary principle in reference to mandamus, that the right to the writ should be complete and perfect at the time it is applied for. (3.) If the order in question was properly granted, this result will follow—every contractor who has a claim against the corporation of the city, instead of bringing an ordinary action upon his contract, will be enabled to apply for a mandamus, and then obtain a reference to settle whether any thing is due upon that contract, and, on the coming in of the referee's report, will be entitled to a peremptory writ for the payment of such claim.

VI. The question whether the commissioners of records are a legally organized body, arises in this proceeding, for these reasons: 1. The sixth section of the act of 1860 does not command the comptroller to pay any sum to the contractors with the commissioners of records, but only such sum as may be found *due.* 2. The question whether any amount is due, involves the question whether the commissioners of records have any legal existence; for, if they have not such existence, they could neither contract a debt for themselves, nor for the county. 3. The case of the *Town of Guilford* v. *The Supervisors of Chenango Co.*, (3 *Kernan*, 143,) referred to in the opinion at the special term, does not affect the position above taken, because in that case the supervisors were imperatively commanded to raise a specific sum, not such a sum as might be found due.

VII. The act of April 13th, 1855, is unconstitutional, for the reason that the legislature had no power to *appoint* the commissioners of records.

*J. W. Edmonds* and *J. T. Brady*, for the relators. I. The act of 1860 is imperative upon the defendants. The words "to authorize," mean "must," or "shall," because public interest or rights are concerned; and because the public or

third persons have a claim *de jure* that the power shall be exercised. (1 *Kent's Com.* 5th ed. 467, *note d. Newburgh, Turnpike Co.* v. *Miller*, 5 *John. Ch.* 113. *Rex* v. *Barlow*, 2 *Salk.* 609. *Backwell's case*, 1 *Vern.* 152. *Malcolm* v. *Rogers*, 5 *Cowen*, 193. *Minor* v. *Mich. Bank*, 1 *Peters*, 64. *People* v. *Westchester*, 12 *Barb.* 452. *Regina* v. *Tithe Commissioners*, 14 *Q. B.* 474.)

II. The act of 1855, under which the contract was made, is not unconstitutional. (*People* v. *Draper*, 15 *N. Y. Rep.* 532. *Per Harris, J.* at special term, in *Central Park* case.)

III. Even if the act is unconstitutional, it certainly is constitutional and competent for the legislature to direct the board of supervisors to raise money to defray the expense of preserving the county records.

IV. The comptroller having put his refusal to draw his warrant on the single ground that there had been no judicial determination, he is now precluded from raising any other objections, and therefore the only question raised on this appeal, is that growing out of a judicial determination.

V. It was competent for the court, on an application for a mandamus, judicially to determine whether any thing, and what was due to the relators ; and that, either by direct action of the court, or through the intervention of any of its officers. (*Judiciary act of* 1847. *Laws of* 1847, *p.* 344, § 77. 2 *R. S.* 383, § 39. *Laws of* 1845, *chap.* 163, § 3.)

VI. The object of the act of 1860 was to remove all questions as to the constitutionality of the act of 1855, and the validity of the contract made in pursuance of it, and to have the relators compensated for money actually earned by them in the performance of the contract ; and there is no other mode in which that purpose can be carried into effect than by a writ of mandamus, and a judicial determination therein of the amount thus earned by them. *Ubi jus ibi remedium.*

*By the Court*, CLERKE, P. J. I. The position taken by the counsel for the defendant, in his 7th point, is disposed of

by the act of April 17, 1860, authorizing the supervisors of the county of New York to raise money by tax for city and county purposes. By the 6th section of this act they are empowered to raise and collect, in addition to the ordinary taxation, the further sum not exceeding $80,000, to meet and pay whatever sum up to that amount may be found due to the contractors with the commissioners of records. Whether the legislature had, or had not, the constitutional power, originally, to appoint the commissioners of records, under whose direction and superintendence the work was done, yet the work having been done, and the legislature determining that the work was a service rendered to the county, they had the right to tax the inhabitants of that portion of the state to pay for it. Although it cannot authorize the taking of the property of an individual for public purposes without compensation, or for private purposes with or without compensation, yet it has the absolute power to determine what sums shall be raised by taxation, and the purposes to which they shall be applied. It can make appropriations of money whenever the public well being requires ; and of this it alone is the sole judge. It can apportion the public burthens among all the tax paying citizens of the state, or among those of a particular section or territorial division. (*Town of Guilford* v. *Supervisors of Chenango County*, 3 *Kernan*, 143. *The People* v. *The Mayor &c. of Brooklyn*, 4 *Comst.* 419.)

In the present case, the legislature has deemed it proper to determine that the work performed by the relators for the county is for the public good, and, without any reference to the mode by which they were authorized to enter upon the performance of this work, it has enacted that they shall receive compensation for it, and has taxed the inhabitants of this division of the state for that purpose. It is no objection to this that the legislature has not declared the precise amount of the claim ; being ignorant of the exact value of the service, the act specifies a maximum amount beyond which the relator shall receive nothing, at least in this way, for the serv-

ices already rendered; and it indicates the method by which the actual amount due shall be ascertained. This the legislature has as much authority to do as to specify the exact sum absolutely, in the first instance; and, in neither case have the courts power to supervise or review the action of that branch of the government.

II. The only question, then, which remains, arises on the interpretation of the last sentence of the section to which I have referred. It authorizes the comptroller to pay the amount when it shall be *judicially determined.* Does this require that an ordinary action shall be commenced against the board of supervisors, and a judgment recovered in it, before the comptroller shall pay any amount; or shall the amount be determined in any way which the court may deem expedient?

What the legislature intended by this phrase, can only be ascertained by considering what was the legal method of enforcing claims of this nature against the board of supervisors at the time the act of 1860 was passed. If the remedy by an ordinary action could be sustained, it would be reasonable to suppose that the legislature intended that this method of judicial determination should be adopted; otherwise, if the only method by which redress could be obtained was by the extraordinary remedy by a writ of mandamus, it is fair to assume that the judicial determination may be provided for under the proceeding in that writ, in such a manner as the court entertaining the proceedings may deem most convenient and conducive to the end contemplated by the legislature. All constitutional questions as to the appointment of the commissioners, all questions relating to the utility· of the work; in short, all questions as to the meritorious nature of the claim being disposed of by that body in its sovereign capacity, the only remaining subject of inquiry was the precise amount of that claim, which it left to be determined by some other tribunal.

Nothing is better established than that, generally, a writ

of mandamus will not lie, where an adequate remedy by action exists.

The writ of mandamus is a high prerogative writ, of which the remedial power is most effective and most extensive. It was devised to supply a defect in the administration of justice. It is directed to any natural person, corporation, or inferior court of judicature, requiring them to do some specific thing which the supreme court has resolved it is their peculiar office and duty to do. It lies to compel the admission or restoration of the party applying, to any office or franchise of a public nature. It lies for the production, inspection, or delivery of public books or papers, for the surrender of the *regalia* of a corporation; to oblige bodies corporate to affix their common seal; to compel the holding of a court; and for an infinite number of other purposes, which it is impossible minutely to recite. (3 *Black.* 110.) In some cases this writ may be issued where the injured party has another more tedious method of redress, as in the case of admission or restitution to an office. Where, however, the party has a complete and specific redress at law, the circumstance of its being a more tedious method will not be sufficient to warrant the court in granting a *mandamus.* There must be not only a specific legal right, but generally the want of a specific legal remedy, in order to found an application for this writ. (*Lord Ellenborough,* 8 *East,* 219.) But it will never be granted where there is a plain and adequate remedy by action, for the party aggrieved. (*Ex parte Lynch,* 2 *Hill,* 45.) But, in the present case, had the relators a remedy by action? The revised statutes very amply and specifically provide for the cases in which supervisors, boards of supervisors, and counties, may be sued. (1 *R. S.* 384, *mar.;* 377, *mar.* 2 *id.* 473, *mar.*) According to these provisions the counties may be sued for certain claims, or in respect of certain causes of action or controversies, but not for every claim, cause of action, or controversy. I agree entirely with the views presented by Mr. Justice Oakley in *Brady* v. *The Supervisors of New York,*

The People *v.* Haws.

(2 *Sand. S. C. Rep.* 460,) that " those sections of the revised statutes were intended to provide a remedy against a county for such causes of action (and no other) as could not be presented to and examined and allowed by the board of supervisors *as county charges.* But every claim, which is a county charge, is to be audited and allowed by the board of supervisors, who are a judicial body, constituted by law to decide on all matters of account between individuals and the public body composing the county, which they represent." " The statute virtually makes the boards a court of arbitration, to which all parties having claims against their respective counties, other than those of the indefinite kind before referred to, must submit such claims for examination, audit, and allowance." The opinion, which I have quoted, shows that all the cases establish the general principle that wherever services have been rendered, which are beneficial to a county, and no specific compensation is provided for the same by law, they shall be deemed contingent charges against the county. Of the allowance of such charges the board of supervisors, as we have seen, is the sole judge; unless the supreme legislature itself should allow and provide for it, as in the present case.

The relators, then, had no remedy by action; and the only remedy, to which they could resort for redress, was the writ of mandamus. The legislature could not, therefore, have intended by the terms "*judicial determination,*" a determination by action; because such a remedy did not exist in favor of the relators. The relators could have had no judicial determination, except in a proceeding of this nature; and in the absence of any specific direction in the act, as to the manner of this determination, it would be unreasonable to infer that any other mode was intended than that which the court, where the proceedings by mandamus were pending, may deem expedient.

We are, therefore, unanimously of opinion that the remedy adopted by the relators is the proper one, and that the decision of the special term is correct.

But as we find that the decision appealed from is not, strictly speaking, a *final* judgment, although it decides the merits of the controversy, we must dismiss the appeal, instead of affirming the judgment. Wherever a case is referred by the special term, even when it settles in its order all the essential points at issue, it is nothing but an interlocutory order, and no *final* judgment can be entered until the coming in of the report. There can be an appeal only from a final judgment.

Appeal dismissed, with costs.

[New York General Term, February 4, 1861. *Clerke, Sutherland* and *Allen,* Justices.]