PEOPLE *ex rel.* NAVARRO, appellants, v. GREEN, comptroller, etc.

*Statute construction — New York city board of audit — mandamus.   Laws 1870, chaps. 137, 383; 1871, chap. 213.*

The relator furnished a quantity of water-meters under a contract with the city of New York, made through the commissioner of public works, under a special provision of chap. 383, Laws 1870, § 13.   By chap. 213, Laws 1871, § 5, the comptroller of New York city is directed to raise on revenue bonds such amounts as may be necessary to meet the expenses incurred in procuring, connecting and setting the meters, and to " pay for the same, on the requisition of the said commissioner of public works."

*Held,* that the requisition of the commissioner was not final as to the right of the relator to compensation, nor was the comptroller upon its presentation bound to pay the sum named.   The provision of the act of 1871, directing the comptroller to raise the money and pay for the meters, did not repeal §§ 37 and 39, Laws of 1870, chap. 137, which established an auditing bureau, and declared that moneys drawn from the city treasury should be upon vouchers examined and allowed by the auditor and approved by the comptroller.

*Held,* also, that a return by the comptroller to a mandamus to compel payment for such meters, that the sum claimed for the meters was not due ; that the meters were not made of the best quality of brass, and were not such as were agreed to be furnished, etc., and that the contract between the relator and the city was entered into by fraud and covin, were material, and could not be stricken out.

The contract made with the city and the debt due under it could be enforced by action.   But it did not necessarily follow that the relator was not entitled to mandamus to enforce his claim.   In case a proper audit had been made and the comptroller refused to pay, mandamus might properly issue.

THIS is an appeal from order made by Mr. Justice FANCHER, refusing to grant relator's motion to strike out the whole or any

part of respondent's return to the alternative writ of mandamus, to raise on revenue bonds of the city of New York and pay to the relator the sum of $283,500 with interest, the amount claimed to be due to the relator for 4,050 water-meters furnished under a contract, dated August 22, 1871, made with the relator by the commissioner of public works. It was determined in *People ex rel. Navarro v. Van Nort*, 64 Barb. 205, that the contract in question was valid, and that a mandamus should issue to the commissioner of public works to make his requisition upon the comptroller for the payment of the price of the meters furnished. In obedience to this writ, the commissioner made his requisition upon the comptroller. The comptroller did not comply with this requisition, and did not proceed to act with a view to raise the money in question, and this mandamus was sought against him. The objections raised to the return appear sufficiently in the opinion.

*Alexander & Green, A. R. Lawrence* and *A. J. Vanderpoel,* for relator.

*E. Delafield Smith* and *J. C. Carter,* for respondent.

BRADY, J. We held on the application of the relator in *People v. Van Nort,* 64 Barb. 205, that the commissioner of public works was authorized under the provisions of the act of 1870, chap. 383, § 13, to select and to make, on behalf of the city, a contract for the delivery of the meters contemplated, and that the legislature made that transaction independent of the provisions of the charter affecting contracts generally. The contract made, therefore, between the relator and the city, through the commissioner of public works, was declared valid. We also determined that the relator, on his application, therefore, was entitled to a mandamus directing the commissioner to issue the requisition for which the act of March 29, 1871, chap. 213, § 5, provides, because it was necessary, in our judgment, to enable the relator to collect his claim, whatever it might be. We suggested that when the collection was essayed the city could then present any objections or defense of wrong done or fraud committed, if such a defense existed. The requisition upon the issuing of the mandamus was given, and the relator again presents his claim and seeks to compel its payment by mandamus, predicating his right to that process upon that requisition, and upon the act of March 29, 1871,

*supra*, which authorizes and directs the comptroller to raise, on revenue bonds, in anticipation of the moneys to be collected for the expenses of the meters, their connections, etc., such amounts as may be necessary to meet the expenses incurred in procuring, connecting and setting them, and to "pay for the same on the requisition of the said commissioner of public works." It was not decided by this court, on the former application mentioned, that an action could not be maintained against the city, but that the requisition was necessary to enable the relator to collect his claim, the comptroller not being called upon to pay any amount until a requisition, such as contemplated by the act, *supra*, was obtained. It was apparent to this court that when the process went forth, the object of which was to compel payment, the city would have the opportunity to present any valid defense that might exist. This court did not intend to declare that the requisition should be final of the right of the relator to compensation, or that the comptroller, upon its presentation, should pay the sum named. The only appropriation made to pay the relator's claim was that accomplished by the act of 29th March, 1871, the contract out of which it arose being, as already suggested, an exception to the general provision of the charter. The contract was made with the city, and the debt due under it, whatever that may be, is, therefore, one against the city, vesting in contract, and which may undoubtedly be enforced by action. This conclusion is too plain to require more than a statement of it. What the expenses would be, in procuring, connecting and setting the meters, would depend upon the number purchased and employed, and the price to be paid for the labor done, and would necessarily be subjected to the examination and settlement of the finance department, to be determined with reference to the contracts and the faithful performance and extent of performance of their obligations. The money to be raised was not only what was required to pay for procuring the meters, but for connecting and setting them; that is, placing them in the stores, etc., mentioned in the act of 1870, *supra*, authorizing the commissioner to use them in his discretion.

It is alleged in the return, that the claim of the relator has not been audited by the finance department in accordance with the provisions of the act of 1870 (chap. 137, § 37), which establishes an auditing bureau to audit, revise and settle all accounts in which the city is concerned as debtor, and which is followed by § 39, declaring

that all moneys drawn from the city treasury shall be upon vouchers for the expenditure thereof examined and allowed by the auditor and approved by the comptroller. It is not alleged in the alternative mandamus that the audit mentioned was made, and it seems to be admitted that it was not; and we are, therefore, met upon the very threshold of· this appeal by the question, whether it is not indispensable to the relator's right to a mandamus against the comptroller, that he should have handed his account to the finance department for audit and settlement.

It must be borne in mind that his contract is with the city, and his account is one in which the city is concerned as debtor, and in such cases, in the absence of any statute expressly to the contrary, the remedy is by action, unless the account is audited, and allowed, and approved in the manner provided by law. This rule was settled by the case of *The People* v. *Flagg*, 17 N. Y. 584. The provisions of the act of 1853 (chap. 217, § 12), considered and passed upon in that case, are almost precisely like those in the act of 1870 (chap. 137). The court held that the comptroller was not compellable by mandamus to draw his warrant in payment of services rendered, to the city, under the direction of one of the executive· departments until such claim has been allowed by the auditing bureau, although the common council· directed the payment of a specific sum. To the same effect, *People ex rel. Cunningham* v. *Brennan,* 18 Abb. 100. The answer to this proposition is, that the requisition of the commissioner of public works is final upon the comptroller, upon the presentation of which, under the statute of 1871, *supra,* it became his duty to pay; but this view is untenable. The cases cited and the argument advanced to sustain this response are ineffectual for that purpose. The provision of the act of 1871, authorizing and directing the comptroller to raise the money and pay for the meters, did not repeal the existing requirements under the act of 1870 (chap. 137), suggested, either in terms or by implication. The requisition of the commissioner was a certificate of the receipt of the meters, or a voucher, and nothing more in legal contemplation. The price was established by the contract, it is true, but the account was to be audited, nevertheless, in accordance with §§ 37 and 39 of such act, which declared that all accounts should be audited and settled in the manner stated, and that all moneys drawn from the treasury should be upon vouchers examined and allowed by the auditor and approved by the comptroller. The requisition of the commissioner

is of no higher authority than the resolution of the common council, so far as the finance department is concerned. The audit of an account, *ex vi termini*, imports judgment upon it (*People ex rel. Brown* v. *Green*, 43 N. Y. 224), and the exercise of that judgment required by statute cannot be declared suspended or destroyed by other than legislation too evident to admit a doubt of the intention of the legislature to suspend it in a given case. It is clear, however, that such was not the intention. The direction to pay relates to expenses other than those of procuring the meters, and if the view of the relator's counsel be correct, then the finance department would have no control over the expenses of connecting and setting the meters, but would be obliged to pay on the mere requisition of the commissioner. The effect of this would be, that he would become the absolute master of the situation, and invested with the power of determining by his own act the liability of the city. No such authority was conferred or designed to be. The selection of the meters was intrusted to him, but there, his authority as a finality ended. It was not intended to dispense with the auditing bureau, which was created as a check, and its office should not be held to have been taken away, unless such result is a legal necessity. In order to carry out the views of the relator, it would be necessary for us to hold, that the provisions of the charter of 1870 (chap. 137), in reference to the audit of accounts, were, in respect to his claim, repealed, that the comptroller was, therefore, obliged to pay him on the requisition of the commissioner, without further examination, and that such was the duty imposed on him by the statute of 1871, *supra*. It is proper to suggest here, that repeals by implication are not favored unless the several statutes are decidedly repugnant to each other. These under consideration are in harmony and of great value. We do not think we are called upon to declare the doctrine contended for. Nothing has yet been disclosed which will justify such a conclusion.

The cases to which we have been referred, on this branch of this appeal, were to the effect that where a municipal corporation or a ministerial officer is required to perform a duty, that is, to put the necessary machinery in motion to accomplish the object or purpose of the law, the writ lies to enforce it. A mandamus, for instance, to compel the common council of this city to create a public fund or stock to be denominated market stock was sustained. *People* v. *Common Council*, 3 Keyes, 83, *supra*. A mandamus would also issue to

compel a committee of the common council to report where the duty to do so under certain conditions was imposed by law (*Buck* v. *City of Lockport*, 6 Lans. 251), and as stated in that case to compel a corporation to put the proper machinery in motion to · raise the necessary funds, or to put the claims presented in proper shape for liquidation and payment. See, also, *McCullough* v. *The Mayor*, 23 Wend. 460 ; *People ex rel. Board of Education* v. *Bennett*, 54 Barb. 481 ; *People ex rel. Market Com.* v. *Common Council*, 1 Abb. (N. S.) 318 ; S. C., 3 Keyes, 81 ; *People* v. *Mead*, 24 N. Y. 114 ; *People ex rel. McSpedon* v. *Haws*, 34 Barb. 69, 2 Crary's Spec. Proc. 55, *et passim*, 119. And hence we directed the commissioner of public works to issue a requisition to put the necessary machinery in motion. We then enforced the discharge of a duty imposed, but nothing more. These cases do not establish the proposition, that where an action may be sustained the remedy by mandamus is concurrent with it, but that an action on the case for refusing to discharge the duty may be maintained, to which the relator will not always be driven. This principle is stated in the adjudications, and the distinction between an action on the case, for official misconduct, and an action to enforce the claim clearly pointed out. In *McCullough* v. *The Mayor*, *supra*, Justice BRONSON said, " although as a general rule a mandamus will not lie where the party has another remedy, it is not universally true in relation to corporations and ministerial officers. Notwithstanding that they may be liable in an action on the case, for the neglect of duty, they may be compelled by mandamus to exercise their functions, according to law. In these cases, and indeed in all the cases bearing upon this subject, the rule is conceded, that a mandamus is not the proper remedy for the recovery of money, where an action at law may be maintained for the same purpose. There are some exceptions to this rule, but the facts which create them must be not only conclusive in themselves, but admit of no question, and the liability must be one about which the law is not only well defined, but certain. In the case of *People* v. *Mead*, 24 N. Y. 114, which the council for the relator seems to regard as favorable to him, the mandamus was allowed on the assumption that an action could be brought against the town but would be inadequate, " for towns," said DENIO, J., " are not presumed to have any property liable to seizure on execution." If the proper audit were made of the relator's · claim, for example, and it was one against the county, or one to recover which an action

could not be maintained, and the comptroller refused to pay, a mandamus might properly issue. *People* v. *Flagg, supra.* The whole machinery of the law would then be exhausted, and unless, on the application for the mandamus, some reason, founded upon discoveries affecting the justice of the claim, should be interposed, the relator would not be compelled to bring his action. His legal status would then be such as to command obedience from the comptroller. The subject under consideration is well illustrated by the case of *Ex parte Lynch,* 2 Hill, 45, which is referred to and approved in *People* v. *Mead, supra.* The supervisors of New York were, by statute, required to audit and allow the claim of the relator, and he sought by mandamus to compel the performance of that duty, but the court refused to grant that remedy, because he had a right of action against the city for his salary, which was regulated by statute, but otherwise *semble,* if the only remedy was by action on the case for official misconduct. The direction to audit and allow in such a case, where the sum to be paid is regulated by statute, is equally as conclusive and binding as the direction to pay under the act of 1871, *supra ;* but it was held to be in subjection to the existing right of actionand not enforced. "The writ of mandamus," saith Blackstone, Book III, p. 110, "is a high prerogative writ of a most extensively remedial nature, and may be issued in some cases where the injured party has also another more tedious method of redress, as in the case of admission or restitution to an office; but it issues in all cases where the party hath a right to have any thing done and hath no other specific means of compelling its performance." It follows from these views that the whole return cannot be stricken out, the allegation considered being a good answer.

It also follows that the allegations in the return, that the sum claimed is not due ; that the meters were not made of the best quality of brass, and not such as were agreed to be furnished; that they were not worth more than thirty-five dollars each, with their connections and setting; and that the contract between the relator and the city was entered into by fraud and covin, are material and cannot be stricken out.

These are issues which the respondent had the right to create, but the other parts of the return are immaterial and must be stricken out. The contract was legally made in form and is binding upon the city, unless destroyed by the charge of fraud being proved.

The appropriation was made in 1871 to pay the obligations incurred by it, and by enactment, to which reference has been made, and which was not repealed by subsequent legislation. It may be that the provisions of the charter of 1870, *supra*, in relation to the audit and settlement of accounts in the finance department, were by chapters 9 and 375 of the Laws of 1872 repealed, as to the relator's claim, and, if so, then it may be necessary for him to show that it was audited and allowed as provided by these acts, namely, by the concurrent vote of the members of the board of audit and apportionment. The second section of chapter 9, *supra*, and of which chapter 375 is an amendment, seems to embrace all claims remaining unpaid for supplies and materials furnished during the year 1871, for the purposes of the various departments; and if the relator's demand is embraced therein, and it seems to be, then an audit by the finance department, under the law of 1870, *supra*, would not be sufficient. The court of appeals has recently so declared in the case of *People ex rel. Brown* v. *Green*, *supra*. The powers possessed by the board of audit and apportionment conferred by the acts of 1872, *supra*, have been vested and continued in the new board of assessment and apportionment, created by chapter 335, Laws of 1873, § 112.

The order made at special term must be modified, in accordance with the conclusions herein expressed, if the relator designs to continue these proceedings. It is patent, that if the audit of his claim required was not made, he cannot succeed herein, and must resort to his action, which will be governed by other legal rules.

*Ordered accordingly.*