# PRACTICE REPORTS.

## NEW YORK COMMON PLEAS.

### EDWARD SMITH, appellant agt. THE MAYOR, &c., of New York, respondents.

1. No member or committee of the common council of New York can make any contract, or enter into any obligation binding the corporation, unless the authority to do so has been distinctly conferred, or the act is subsequently ratified by an ordinance, act or resolution adopted in the manner prescribed by law.
2. The common council, however, may enter into any contract or obligation within the scope of its legislative authority, unless by the charter the matter of such contracts is exclusively within the jurisdiction of one of the executive departments.
3. The limitation upon the power of the common council to make contracts imposed by the ninth and twenty-third sections of the amended charter of 1849, (*Laws of* 1849, *p.* 278,) applies only to those contracts relating to matters exclusively committed to the executive departments.
4. The employment of *coaches* by members of the common council, while engaged in matters appertaining to their legislative duties, is neither embraced within the business of any one of the departments, nor an executive act. It is within the powers of the common council to make contracts of that nature.
5. The thirty-eighth section .of the charter of 1857, does not militate against this construction. The contracts referred to in the last mentioned section are those which would admit of being contracted for by sealed proposals, upon a public notice of ten days.
6. The hiring of a coach by a member of the common council, when the necessity arises for doing so, is a contract which, from its very nature, was never intended to be embraced under a regulation requiring sealed proposals and ten days public notice, before the contract can be made.
7. The passage of a resolution by the common council, directing payment of a bill for carriage hire previously contracted by individual members of it, is equivalent to an original authority, and the obligation thus recognized and entered into is binding upon the corporation.

*General Term, (before three judges,) January* 1861.

APPEAL from a dismissal by Mr. Justice HILTON, of the plaintiff's complaint, at trial.

VOL. XXI.                    1

The plaintiff brought his action to recover $491.56 for carriage hire, incurred by divers members of the defendants' common council in the necessary performance of their official duties—$317 of which was incurred before the first day of June, 1856, and the remainder, viz., $104.50, was incurred after the passage of the charter of 1857.

To sustain his case, the plaintiff proved the performance of the work; that it was done at the request of some aldermen and councilmen, who were examined, and testified that the carriages were necessary for them in the performance of their official duties as members of divers committees, and in two cases to enable them to attend meetings of the board, they suffering on account of sickness.

The plaintiff also showed, that in the appropriation bills were contained divers appropriations for county and common council contingencies, and showed, or offered to show, that for a series of years carriage hire had been paid under those heads. He showed, also, an appropriation in the general acts for such uses and purposes.

The plaintiff also introduced in evidence several resolutions of the common council, directing payment of such carriage hire as the members would incur in the discharge of their official duties, not exceeding $100 per annum for each member, which he proved were passed both before and after the date of these charges in suit; and it appeared that the claims in suit did not exceed $100 per annum for each member. The plaintiff also offered to prove that he had supplied carriages to members of the common council before this bill, and had been paid therefor.

The plaintiff also proved that $104.50 of his account was created after the passage of the charter of 1857.

After hearing plaintiff's counsel the court dismissed the complaint on the following grounds, viz:

A person dealing or contracting with the corporation of the city of New York must be presumed to do so with reference to the charter, and with a full knowledge of the

powers of the officers of the corporation with whom he deals or contracts.

The plaintiff has failed to show any contract made by the corporation for rendering the services for which compensation is claimed, in the manner required by the charter.

The corporation can only contract in the manner pointed out by the charter, and by which its legislative power is vested in the boards of aldermen and councilmen, and its executive powers in the mayor and heads of departments.

Neither of the members of the board of aldermen or councilmen, at whose request these services were rendered, was an executive officer authorized to contract so as to bind the corporation; but, on the contrary, are expressly prohibited by the charter from performing any executive duty whatever.

To entitle the plaintiff to recover, he must show that he rendered the service upon a contract made with the corporation, and as none such has been shown, the complaint must be dismissed.

Complaint dismissed.

D. McMahon, *for appellant.*
R. F. Andrews, *for corporation.*

By the court, Daly, F. J.   The claim in this action was for the hire of carriages furnished to members of the common council in the years 1855–6–7.   The carriages were used by the members while engaged in discharging the duties of committees, upon which they were appointed, except in two instances, when they were used to transport members disabled by gout and rheumatism, to and from the sittings of their respective boards.   In June, 1856, a resolution was adopted by the mayor and common council, directing the comptroller to pay such bills as should be thereafter incurred for carriage hire, by members of the common council, when necessary for the furtherance of the

business of the corporation, provided each bill should contain the name of the party, and that no one should exceed one hundred dollars per annum; and a resolution was also adopted on the 26th day of December, 1856, directing the comptroller to pay all bills incurred in the years 1856–7 for the hire of carriages used by the members in the discharge of official duties, provided the bills did not exceed in the aggregate one hundred dollars per year for each member.

I think the plaintiff was entitled to recover, at least, for the carriages supplied in the years 1856–7. No resolution appears to have been adopted in respect to the year 1855. In the preceding year, that is, on the 22d of April, 1854, the comptroller was directed to pay all necessary bills incurred by members of committees of either board, for carriage hire, while on official business; but this did not by its terms embrace bills that might thereafter be incurred. A resolution was adopted in 1842, that no charge for carriage hire should thereafter be allowed, unless incurred by a member, or a committee, in the performance of official duty; but this could scarcely be construed as a general authority thereafter to members to employ carriages, while so engaged, without the direction, or ratification and approval of the common council. That it has not been so regarded by the common council appears by the specific authority conferred by resolution upon the comptroller to pay such bills as had been, or might be incurred in the years 1854–6–7. No member or committee of the common council can make any contract, or enter into any obligation binding the corporation, unless the authority to do so has been distinctly conferred, or the act is subsequently ratified by an ordinance, act or resolution, adopted in the manner prescribed by law. (*Amended charter of* 1830, § 13; *of* 1849, §§ 1, 4, 6, 9; *of* 1857, § 11.) And as the common council had conferred no authority upon its members to engage carriages during the year 1855, or ratified their act

in so doing, it follows that the plaintiff could not recover for the hire of carriages furnished to members during that period.

For the carriages supplied, however, during the years 1856–7, the plaintiff was entitled to recover. It was held by the court of appeals, in *Peterson* agt. *The Mayor, &c.,* (17 *N. Y. R.*, 449,) reversing the judgment of this court, (4 *E. D. Smith*, 413,) that the common council could enter into any contract or obligation within the scope of its legislative authority, unless the subject matter of such contract was exclusively within the jurisdiction of one of the executive departments ; and that where a member of a committee of the common council employed an architect to draw plans for the erection of a public market, which market was directed by a resolution of the common council to be built in conformity with such plan, the adoption of such a resolution was a recognition and approval of the act of the committee, and equivalent to an engagement on the part of the corporation to pay the architect for his services. This decision was made under, and was a judicial construction given by the court of appeals to the ninth and twenty-third sections of the amended charter of 1849, (*Laws of* 1849, *p.* 278) declaring that the executive power of the corporation should be vested in the mayor and the heads of departments, and that neither the common council, nor any member of committee thereof, should perform any executive business whatever, except such as should be especially imposed on them by the laws of the state ; and that all contracts to be made or let by the authority of the common council, for work to be done or supplies to be furnished, should be made by the appropriate heads of departments, under such regulations as should be established by ordinances of the common council. The court held that this limitation upon the power of the common council to make contracts, applied only to those relating to matters exclusively committed to the executive depart-

ments, and that the employment of the architect, by a member of the committee of the common council, was not an executive act, which was defined by the court to be an act done in the execution of an existing law.

In conformity, then, with this decision, it is very clear that the employment of coaches by members of the common council, while engaged in matters appertaining to their legislative duties, is neither embraced within the business of any one of the departments, nor an executive act; nor do I think that we can say judicially that it is not within the legislative powers of the common council to authorize contracts of this nature. These powers are very extensive. (*Charter of* 1686, §7; *charter of* 1730, §14; *Kent's Notes, note* 23.). "These broad and latitudinary powers," says Chancellor KENT in the note above quoted, "were given to be exercised with sound discretion, and with a liberal spirit commensurate with the growing wants and prosperity of a great commercial metropolis, and the courts construe powers liberally for such purposes." No court, therefore, would be justified in saying that a resolution of the common council, authorizing its members to use coaches when necessary, in their official duties, and directing the expense, when incurred, to be paid as a public charge, was not within their power to enact. The city is widely extended, and it appeared from the evidence that the aldermen and councilmen, who used carriages, had to travel about in performance of committee business in different parts of the city, in some cases going as far as Harlem, to visit sewers and to examine the necessity of applications for sewers before reporting to the common council. It can readily be conceived that exigencies might arise requiring not only personal inspection on the part of committees, but great promptness and dispatch in obtaining and communicating information either to facilitate the deliberations of committees, or for the legislative action of the common council; and the propriety or necessity of employing coaches under

such circumstances is a matter which must be left to the discretion of the common council, the remedy against its abuse being, as Chancellor KENT has remarked (note 23,) public opinion, the elective franchise, and the enactment by the legislature, as has been frequently done, of laws limiting or restraining the general powers conferred by the charters.

The thirty-eighth section of the amended charter, passed May 1, 1857, contains a clause which was not in the amended charter of 1849, and has not, therefore, received a judicial construction by the decision of the court of appeals in *Peterson* agt. *The Mayor, &c.* After the provision in the twenty-third section of the amended charter of 1849, upon which the court of appeals passed, and which is re-enacted, the thirty-eighth section, above referred to, further declares that " whenever any work is necessary to be done to complete or perfect a particular job, or any supply is needful for any particular purpose, which work or job is to be undertaken, or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than two hundred and fifty dollars, the same shall be by contract, under such regulations concerning it as shall be established by ordinance of the common council, unless by a vote of three-fourths of the members elected to each board, it shall be ordered otherwise." And it is then declared that all contracts shall be entered into by the appropriate heads of departments, and shall be founded on sealed bids and proposals, of which public notice must be given for ten days in two of the daily newspapers employed by the city. I do not see that this provision varies the law, or at least sufficiently so as to render the construction adopted by the court of appeals inapplicable to it. The contracts to be entered into under it, in accordance with such regulations as shall be established by ordinance of the common council, are evidently such as can be entered into by the appropriate

heads of departments; and a contract for the carriage hire of aldermen or councilmen, while engaged in legislative duties, as before remarked, does not come within the business of any particular department. It was said by the court in *Peterson* agt. *The Mayor*, (4 *E. D. Smith*, 416,) that there were many kinds of employment in regard to work to be done for the city, which would not admit of being contracted for by sealed proposals upon a public notice of ten days; and it is very evident that the contracts referred to in the thirty-eighth section of the amended charter of 1857 are those that can be so entered into; and in respect to contracts not relating to matters belonging to the different departments, that the law remains the same as when *Peterson* agt. *The Mayor* was decided. The hiring of a coach by a member of the common council, when the necessity arises for doing so, is a contract which, from its very nature, was never intended to be embraced under a regulation requiring sealed proposals and ten days' public notice before the contract can be made.

By the resolution of June 17, 1856, the common council authorized the employment of coaches by its members to facilitate the discharge of official business; and by the resolution of December 24, 1857, it recognized and approved of every case in which a coach had been hired and used for such a purpose during the years 1856–7. It was satisfactorily proved upon the trial, that the coaches supplied by the plaintiff during this period, were used by the aldermen solely while engaged in the discharge of official business. The common council having thus ratified and approved both the acts of their members and of the plaintiff, in furnishing carriages during this period, it is equivalent to an original authority, and the obligation thus recognized and entered into is binding upon the corporation.

The judgment rendered at the special term should be reversed, and a new trial ordered.