By the Court, Brady, J.
The commissioner of public works was authorized, in his discretion, to cause water meters of approved pattern and suitable for the purpose, *199 to be designated by him, to be placed in all stores, workshops, hotels, manufactories and public edifices, at wharves, ferry-houses, stables, and in all places in which water was furnished for business consumption, by the department of public works, so that all water furnished therein or thereat might be measured and known by such department, and for the purpose of ascertaining the ratable proportion which consumers of water should pay for ,the water therein or thereat received and used. This authority was conferred upon the commissioners by the 13th section of the act of the legislature, passed April 20, 1870. (Laws of 1870, vol. 1, p. 875.) On the 5th of April, 1870, the city charter, so-called, was passed, under the title of “An act to reorganize the local government of the city of New York.” (Laws of 1870, vol. 1, p. 366.) By its 104th section it is provided, that all contracts to be made or let by authority of the common council, for work to be done or supplies to be furnished, shall be made by the appropriate heads of departments, under such regulations as shall be established by ordinances of the common council; and it declares, substantially, that when any work or supply is needful for any particular purpose, which in its several parts shall together involve the expenditure of more than $1,000, it shall be provided for by contract, under such regulations concerning it as shall be established by ordinance of the common council, unless by a vote of three-fourths of the members elected to such board, it shall be otherwise ordered. And the section further declares, that all contracts shall be entered into by the heads of departments, and shall be founded on sealed bids or proposals made in compliance with public notice duly advertised in newspapers of the city, and shall be given to the lowest bidder. These acts were passed within the period of twenty-one days; the former on the 5th of April, and the latter on the 26th of April, 1870.
It is apparent that the sections named are in conflict *200 with, each other. The commissioner of public works is invested with a discretion, to be employed by him exclusively in reference to the water meters. He is to designate one of approved pattern and suitable for the purpose; that is, he is to select it, and cause it to be put in stores, &c., in his • discretion. It is not a contract, therefore, to be made or let by the common council, but by him, and without any restriction other than those which are imposed by the faithful discharge of the duty delegated. The 104th section relates to contracts to be made or let by the authority of the common council and by the heads of departments, when the expense does not involve the expenditure of more than $1,000; and the provisions as to advertisement apply when the work or supply to be performed or furnished is either ordered by the common council, or necessarily exceeds in amount of expenditure the sum of $1,000. The commissioner is vested with full power. He is to cause the meters to be placed in stores, &c. If the contract is not to be made by him, but on sealed proposals and to the lowest bidder, then no discretion is to be exercised by him, or any other person. That bidder is entitled to the contract, and the sureties accepted bythe city of Hew York for the performance of the contract must respond if the article furnished is not suitable for the purpose. Which of these laws is to prevail ?- What was the intention of the legislature ? The designation of the particular water meter to be chosen should depend upon its adaptability, durability and usefulness. This could be ascertained only by tests of, and comparison with, the various instruments or inventions presented in competition or for examination. The selection of one for general use was to be determined, not so much upon its-price as upon its fitness for the purposes in view. The most expensive might be the most desirable, or vice versa; and hence the necessity of withdrawing it from the general rule applicable to contracts for work and supplies, established *201 by the provisions of the charter of 1870, and which the legislature seems clearly to have done, not directly, but by implication. Although repeal by implication is not favored, and is not allowed save where inconsistency is plain and unavoidable, yet a subsequent statute making a different provision on the same subject is not to be construed as an explanatory act, but an implied repeal of the former, so far as the provisions are incompatible with each other. (Dash v. Van Kleeck, 7 John. 477, 497. The People v. Deming, 13 How. 441.) The 5th section of the act of 1871, passed March 29, (Laws of 1871, vol. 1, p. 441,) is confirmatory of the intention of the legislature to place the whole subject in the hands of the commissioner. It provides that the comptroller shall raise, on revenue bonds, such amounts as may be necessary to meet the expense incurred in procuring, connecting and setting the meters, and pay the same on the requisition of the commissioner of public works. It may be that the power conferred was large and subject to abuse; and while such a criticism is just, it must be borne in mind that it was granted by legislative authority, and that no complaint is made that the discretion was improperly exercised. The respondent rests his refusal to comply with the relator’s demand, upon the ground that the contract which the latter seeks to enforce was not made in accordance with the details prescribed by the charter, already referred to; and upon the further objection that the acts of 1870 and 1871, supra, are unconstitutional and void. The kindred cases in which the city has been relieved of all responsibility under contracts made, are those in which there has been either an assumption of authority which was unwarranted, or an omission to comply with the statutory prerequisites indispensable to the legality of the obligation incurred. (MeSpedon v. The Mayor &c., 7 Bosw. 601. Brady v. The Mayor &c., 20 N. Y. 312. Donovan v. The Mayor &c., 33 id. 291. The People v. Stout, 23 Barb. *202 349. Smith v. The Mayor &c., 10 N. Y. 504. Bonesteel v. The Mayor &c., 22 id. 162. Appleby v. The Mayor &c., 15 How. Pr. 428.) Hone of them present the abstract question involved on this appeal. If the legislature intended to authorize the commissioner to contract for the meters, allowing him to designate the one to be employed, in the exercise of his discretion, there can be no doubt of the liability of the city, on the facts presented herein, and of the duty of the commissioner to make his requisition on the comptroller, in accordance with the act of 1871. It is equally certain, if the contract for them was to be subjected to the formula established by the charter, that the relator has no claim upon the city, and the commissioner is entirely justified in refusing to recognize his demand as lawful. The former of these propositions must be maintained. The legislature intended to make the selection of meters independent of the provisions of the charter, and has done so. The commissioner could not designate the meter to be used if the lowest bidder was entitled to the contract ipso facto, and would not possess the right to test all the meters offered, and compare them with each other, which, under the act of 1870, he could do, and which was in fact done, under the superintendence of the chief engineer of the Croton department, forty-eight having been examined and tried by him. The object of the provision in the charter is to secure the advantages of competitive offers for the work to be done, or the supplies to be furnished ; and when the supply, as in this case, is one involving scientific results attained by mental and corporeal labor, the advantage cannot spring out of mere bids, but of tests to which the thing offered shall be subjected. In such cases, the discretion conferred provides the opportunity for competitive examination and trial, and secures to the city what would not, under the sealed proposal system, be accomplished. “It would,” said Comstock, J., in reference to a similar provision in the *203 amended charter of 1853, “be an unreasonable and mischievous construction of the statute to apply it to services which require for them proper performance scientific knowledge or professional skill,” (People v. Flagg, 17 N. Y. 584;) and these observations are approved in the case of the Harlem Gas Co. v. The Mayor &c., (33 N. Y. 330.) The legislature must be presumed to have acted on this subject with reference to, and fully appreciating the scientific character of, the instrument which was to be obtained and used, and of the superior advantage, if the duty was faithfully performed, of having it chosen in the manner directed. The provision authorizing its selection by the commissioner was adopted during the same session in which the charter was passed, and within a month after—a circumstance which bears upon the question of intention—and shows, when the object in view is considered, a deliberate declaration that the transaction should not be subjected to the general provision of the charter in reference to contracts.
Having arrived at these conclusions, it is unnecessary to consider any other question, further than to say, that the opinion delivered at Special Term is responsive to the assumed unconstitutionality of the acts of 1870 and 1871 referred to, and declares that they are not subject to the objection mentioned. The use of a water meter of proper construction cannot fail to enure to the benefit of the city by securing a rent proportioned to the amount of water used; and if the one chosen is sufficient for the purpose, and there is nothing herein to the contrary, the payment of the relator’s claim should not be delayed. He seems to have furnished the meters in good faith, and, for aught that appears, upon a proper consideration, relying upon the authority of the commissioner to select and order them under and by virtue of the statute conferring the power given him. The mandamus should therefore issue for the requisition demanded. It seems to be necessary, to enable the relator to collect his claim; *204 and on that process the city can present any objections or defence of wrong done, or fraud committed, if. such a defence exist.
[First Department, General, Term, at New York,
November 4, 1872.
Ingraham, Brady and Leonard, Justices,]
The order made at Special Term should, for these reasons, be reversed.
Ordered accordingly.