## Underwood Corporation v. Chester Municipal Authority

*Robert F. Jackson* and *Lewis M. Stevens*, for plaintiff.

*Ellwood J. Turner*, for defendant.

ERVIN, J., December 14, 1942.—Plaintiff, H. B. Underwood Corporation, sued defendant, Chester Municipal Authority, in an action of assumpsit for the sum of $6,128.21, with interest from June 20, 1941. To the statement of claim was attached an itemized statement of the services rendered and materials furnished. It was averred that the prices charged for the services rendered and materials furnished were fair and reasonable.

An affidavit of defense raising questions of law was filed by defendant. The matter was argued before the court en banc.

Where competitive bidding for the performance of needed work is both impossible and impractical, due to the unknown extent and nature of the work required, and where an emergency existed, endangering the public health and safety during the course of the work of repair, is plaintiff barred from recovering the fair and reasonable cost of doing the work by the provisions of section 10 of. the Municipality Authorities Act of June 28, 1935, P. L. 463, as amended by section 1 of the Act of May 20, 1937, P. L. 739, 53 PS §2900f et seq.

*Discussion*

The statement of claim sets forth that defendant owns, maintains, and operates two Snow pumping engines which pump water from the Delaware River into the reservoir which supplies the City of Chester with its drinking water; the operation of these pumps is essential for the maintenance of the water supply of the City of Chester; during June of 1940 defendant determined that the No. 2 Snow pumping engine was in need of repairs; because of the nature and construction of the pump, it was impossible to ascertain the amount and extent of the necessary repairs without dismantling the engine; the process of dismantling one of the pumps would keep it out of operation for approximately a week; from June until November 1940 the demands of the Chester water supply were so great that the No. 2 Snow pumping engine could not be released from operation for the purpose of examination and repair; on or about November 15, 1940, defendant, by its executive manager, E. Fred Muser, orally advised plaintiff that the operation of the pump could be discontinued and requested plaintiff to begin the process of dismantling and examining the pump; that plaintiff did this and the examination revealed that a cylinder head was cracked, the condition of the pump was poor and that it was greatly in need of ex-

tensive repairs and new parts; because of the fact that only one pump remained to perform the function of pumping water into the Chester reservoir, and because of the risk that this other pumping engine might break down or prove inadequate to maintain the water supply for the City of Chester and because of the impracticability of reassembly of the No. 2 Snow pumping engine in the condition in which it was found, an emergency existed requiring prompt action for the replacement, repairing, and reassembling of the No. 2 Snow pumping engine as soon as possible; that in view of the emergency defendant orally requested plaintiff to proceed with the task of repairing the No. 2 Snow pumping engine and of making and installing replacements for defective parts and of reassembling the engine in good working order; plaintiff complied with defendant's request and defendant has refused plaintiff's request to pay the bill. The affidavit of defense raising questions of law sets forth that plaintiff sues on an oral contract; the Chester Municipal Authority was organized and exists by virtue of the Municipality Authorities Act of June 28, 1935, P. L. 463, as amended, 53 PS §2900f et seq.; the statement of claim fails to aver that a written contract was entered into with the lowest responsible bidder after advertisement for bids, as provided by the Municipality Authorities Act of 1935, supra, sec. 10, as amended by the Act of May 20, 1937, P. L. 739, sec. 1, 53 PS §2900o. At the argument defendant admitted the furnishing of the service and material and admitted that the charges therefor are proper for such service and material. Defendant in its brief states that these provisions of the Municipality Authorities Act have never come before the court for construction or interpretation.

Section 10 of the Municipality Authorities Act of 1935, as amended, provides as follows:

"If any project or any portion thereof or any improvement or repair thereof shall be constructed pur-

suant to a contract and the estimated cost thereof exceeds five hundred dollars, such contract shall be awarded to the lowest responsible bidder after advertisement for bids . . . No contract shall be entered into for construction or improvement or repair of any project, or portion thereof, or for the purchase of materials, unless the contractor shall give an undertaking with a sufficient surety or sureties approved by the Authority, and in an amount fixed by the Authority, for the faithful performance of the contract."

Defendant cites the following cases for the proposition that the statutory requirement applies not only to such contracts as are the subject of competitive bidding but embraces all contracts, and must be strictly adhered to in order to charge the municipality with contractual liability: Hinkle v. Philadelphia, 214 Pa. 126 (1906); Smith v. Philadelphia, 227 Pa. 423, 431 (1910) ; Addis v. Pittsburgh, 85 Pa. 379 (1877) ; Coyle v. Pittsburgh, 344 Pa. 426 (1942). Plaintiff, however, claims that the law applicable to this case should constitute an exception to the general rule. We must take the averments of the statement of claim as verity. The statement of claim avers that because of the nature of the work it was both impractical and impossible to advertise beforehand for competitive bids, because no one could know the extent and nature of the needed repairs until the engine had been dismantled and examination made.

Plaintiff further avers that when the dismantling had been done a state of emergency was created requiring the prompt repair, renewal, and replacement of the engine because the water supply of the City of Chester was imperiled during the process, due to the existence of only one other pump, which was subject to the risk of breakdown or of being inadequate to maintain the city's water supply both for the purpose of public health as drinking water and for the purpose of public safety in case of a fire. Other courts have

held that where the required work is unsuited for competitive bidding or where the work is performed under circumstances creating an emergency the statute was not intended by the legislature to apply: Snyder et al. v. Hylan, Mayor, et al., 105 Misc. 78, 173 N. Y. Supp. 366 (1918) ; The Harlem Gaslight Co. v. The Mayor, etc., of New York, 33 N. Y. 309 (1865) ; In the Matter of Petition of Anthony Dugro, 50 N. Y. 513 (1872) ; Gleason v. Dalton et al., 28 App. Div. 555, 51 N. Y. Supp. 337 (1898) ; State of Connecticut ex rel. City of Stamford v. Board of Purchase and Supplies, 111 Conn. 147, 149 Atl. 410 (1930) ; Washington Fruit & Produce Co. et al. v. City of Yakima et al., 3 Wash. (2d) 152, 100 P. (2d) 8 (1940) ; Kilvington v. City of Superior, 83 Wis. 222, 53 N. W. 487 (1892) ; Los Angeles Dredging Co. v. City of Long Beach, 210 Cal. 348, 291 Pac. 839 (1930).

At the argument in this case before the court en banc counsel for defendant stated, in effect, that defendant was willing to abide by the decision of the court if the question was decided in favor of plaintiff, in view of the fact that the services and materials had been rendered and furnished and that the prices charged therefor were fair and reasonable. We feel that this is a case where it was impossible to obtain competitive bidding for the reason that it could not be known what was needed until the pump was dismantled. We likewise feel that after the pump was dismantled an emergency existed which seriously imperiled the health and safety of the citizenry of the City of Chester. If the one active pump had broken down and if a fire had occurred during such breakdown, serious consequences might have ensued. This opinion is not to be construed as a statement by this court that it favors the award of contracts by municipalities without competitive bidding. Under the circumstances of this case, however, we are convinced that the questions of law raised should be decided in favor of plaintiff and against defendant.