(29 Misc. Rep. 684.)

PRESS PUB. CO. v. HOLAHAN et al.

(Supreme Court, Special Term, New York County. December, 1899.)

1. MUNICIPAL CORPORATIONS—CONTRACT FOR WATER SUPPLY—INJUNCTION.
    An allegation in a complaint against the officers of a municipal corpora-
    tion, upon information and belief, that a contract for a public improvement,
    about to be entered into by defendants, "is the result of a fraudulent politi-
    cal combination," unsupported by any averment of the sources of the
    information or of the grounds for belief, is insufficient to entitle a taxpayer
    to a temporary injunction restraining the execution of the contract.

2. SAME—VALIDITY OF CONTRACT.
    Under Laws 1897, c. 378, authorizing the municipal assembly of the city
    of New York to construct or acquire by purchase, and maintain, addi-
    tional waterworks to supply the city, and to provide for its distribution and
    sale to the inhabitants of the city, neither the commissioner of water sup-
    ply nor the board of public improvements has power to contract for a
    supply of water, and for furnishing it to the inhabitants, without authority
    conferred, by previous legislative enactment for that purpose, by the
    municipal assembly.

3. SAME.
    Since, under Laws 1897, c. 378, § 472, the commissioner of water supply
    of the city of New York, with the approval of the board of public improve-
    ments, has power to select and determine all sources of water supply
    that may be needed for the city, but cannot make any binding contract
    therefor without the authority of the municipal assembly, the submission,
    by the commissioner of water supply, to the board of public improvements,
    for its approval, of a contract with a private corporation for supplying
    water to the city, is not ground for the issue of an injunction restraining
    the board of public improvements from approving said contract, upon
    the complaint of a taxpayer that such action would be illegal, and would
    cause him grievous and irreparable injury.

Action by the Press Publishing Company against Maurice F. Hola-
han and others to enjoin defendants, as the board of public im-
provements of the city of New York, from approving a contract for
water supply. Motion denied.

Bowers & Sands (James W. Gerard, of counsel), for plaintiff.

Hoadly, Lauterbach & Johnson (Edward Lauterbach, William C.
Trull, C. M. Ingraham, Henry L. Scheuerman, and Herbert R. Lim-
burger, of counsel), for Ramapo Water Co.

John Whalen (Charles Blandy and Charles A. O'Neil, of counsel),
for Dalton and another.

GILDERSLEEVE, J.   The plaintiff, a domestic corporation, hav-
ing its principal office for the transaction of its business in the city
of New York, brings this action as a taxpayer, and calls for the inter-
position of a court of equity to prevent the board of public improve-
ments of said city from approving, or voting to authorize or ap-
prove, of the execution of any contract with the defendant the
Ramapo Water Company, also a domestic corporation, which would
give, or purport to give, the right to the Ramapo Water Company
to supply water to the city of New York.   This motion is to con-
tinue pendente lite a preliminary injunction restraining the defend-
ants, individually or as members of the board of public improve-
ments of the city of New York, from voting to pass any resolutions
authorizing or granting to the said defendant the Ramapo Water

Company, any contract purporting to give to said water company any right to sell or deliver water to the city of New York. The complaint of the plaintiff sets forth the names of the various persons who constitute the members of the board of public improvements, among whom are Maurice F. Holahan, the president of the board, and William Dalton, the commissioner of water supply of the city of New York. The plaintiff alleges that on or about the 16th day of August, 1899, at a meeting of the board of public improvements, a resolution to enter into a contract with the defendant the Ramapo Water Company was placed before the board of public improvements by the president thereof. The plaintiff further alleges that at this meeting the passage of said resolution directing the execution of said contract was prevented by the attack made upon it by one of the defendants, a member of said board of public improvements. The plaintiff further alleges, upon information and belief, that the attempt to grant to the said water company the proposed contract "is the result of a fraudulent political combination, in violation of law and of the plaintiff's rights as a citizen and a taxpayer," and that the water to be supplied under said contract is unnecessary, and that the present water supply of the city of New York is adequate. The plaintiff also alleges that the said contract, if granted to the said Ramapo Water Company, is and will be injurious to the welfare of the public, and of the plaintiff, as a taxpayer, and in fraud of its rights as such, and will impose a heavy burden on the property of citizens and taxpayers of the city of New York, and will cause plaintiff grievous and irreparable injury. To prevent this injury, as we have already seen, the plaintiff invokes the equitable interference of this court.

The allegation, upon information and belief, that the proposed contract "is the result of a fraudulent political combination," is unsupported by any averment of the source of the information or the grounds of the belief. Such a form of allegation is entirely insufficient, and serves no effective purpose in a pleading. None of the affidavits before me contain any evidence tending to establish the truth of this allegation, and it may therefore be dismissed without further comment.

The plaintiff herein bases its right to an injunction upon an alleged legal fraud, attempted to be committed by William Dalton, commissioner of water supply, and certain members of the board of public improvements, who, it is claimed, have arrogated to themselves to bind the city of New York by authorizing William Dalton, commissioner of water supply, to execute the proposed contract. Otherwise stated, it is the contention of the plaintiff that it is an illegal act for the board of public improvement to authorize William Dalton, commissioner of water supply, to execute the proposed contract before it has been approved by the municipal assembly, and that it is illegal for the said Dalton to execute the said contract without the approval of the municipal assembly. The plaintiff urges that, in a matter such as the proposed contract is intended to encompass, the provisions of the Greater New York charter require that a certain order of procedure should be observed. In this in-

stance it is claimed that the proper procedure is as follows, viz.: The contract, in all its details, is submitted to the board of public improvements; they then approve the same, by resolution; they next frame an ordinance, and transmit the matter to the municipal assembly; the comptroller then certifies to an appropriation of funds to meet the expenditure; and the ordinance thus proposed by the board of public improvements is passed or rejected by the municipal assembly in its entirety. Section 417 of the charter.

It is further claimed that the mayor has a veto power, and that when all these steps have been taken, if favorable to the proposed contract, it becomes the duty of the commissioner of water supply to execute the contract. I think that this is substantially the correct view. It is the contention of the defendant the Ramapo Water Company that the charter confers upon the commissioner of water supply, with the approval of the board of public improvements, the power to make and sign the contract in question, without any action on the part of the municipal assembly. In support of this contention, the defendant asserts that the case of Gleason v. Dalton, 28 App. Div. 555, 51 N. Y. Supp. 337, is authority for this construction of the statute, and that the appellate court there fully considered the sections of the charter bearing upon this question, and that it is no longer open to discussion. The power of the municipal assembly in respect to contracts for water supply was not raised by the pleadings in the Gleason Case, nor was it adjudged. The court say (page 557, 28 App. Div., and page 338, 51 N. Y. Supp.):

"The theory of the complaint is that the proposed contract is unauthorized, by reason of the failure to advertise for bids containing proposals to furnish this water supply."

No other breach of duty is specified in the complaint. It therefore becomes important to carefully examine the charter, and determine where the power under consideration lies. Section 471 of the charter provides as follows, viz.:

"It shall not be lawful for the commissioner of water supply to enter into any contract whatever with any person or corporation engaged in the business of supplying or selling water for private or public use and consumption, unless, preliminary to the execution of the contract, the assent of the board of public improvements, after submission to it of the proposed contract in all its details, shall be given by resolution to the execution of such contract as submitted, and it shall not be lawful for the said city of New York or for any department thereof, to make any contract touching or concerning the public water supply, and especially the increase thereof, with any person or corporation whatsoever, save in accordance with the provisions and requirements of this act, which said provisions and requirements are hereby declared to establish the exclusive rule for the making of such contracts."

It will be seen, from the language of this section, that while the commissioner of water supply may, with the approval of the board of public improvements, make and sign a contract of the character in question, he can only do so "in accordance with the provisions and requirements of this act, which said provisions and requirements are declared to establish the exclusive rule for the making of such contracts." Such an act by the commissioner of water supply is a step in the fulfillment of a function of the municipal government

that comes within his department. Section 457 of the charter provides that:

"The commissioner at the head of each of said departments shall prepare and execute all contracts authorized by the board of public improvements, or by said board and the municipal assembly for his department."

What are the provisions and requirements of that act (Laws 1897, c. 378) that must be observed by the commissioner of water supply, even when his act has the approval of the board of public improvements, before the contract for a water supply can be lawfully made? They are found in section 42 of the charter, which provides as follows, viz.:

"The municipal assembly is authorized, in accordance with the provisions of this act, to construct, establish and maintain, or to acquire by purchase, or condemnation and maintain in all parts of the city, additional water works to supply the city, or any part thereof and its inhabitants with water, and to provide for the distribution and sale to the inhabitants of the city of such water, and fix the terms thereof, and acquire and hold property, real and personal, within and beyond the limits of the city for said purposes. The municipal assembly may pass appropriate ordinances, not inconsistent with law, with this act or with any vested rights of existing companies or corporations, to enforce the provisions of this section, and to carry out its purposes."

Again, section 413 of the charter, headed, "Authorizing Public Improvements," reads as follows, viz.:

"Except as herein otherwise provided, any public work or improvement within the cognizance and control of any one or more of the departments of the commissioners who constitute the board of public improvements, that may be the subject of a contract, must first be duly authorized and approved by a resolution of the board of public improvements and an ordinance or resolution of the municipal assembly. * * * When a public work or improvement shall have been duly authorized, as aforesaid, then, but not until then, it shall be lawful for the proper department to proceed in the execution thereof, in accordance with the provisions and subject to the limitations of this act."

The providing of an additional water supply must be said to be comprehended in the phrase "any public work or improvement." Blank v. Kearney, 28 Misc. Rep. 383, 59 N. Y. Supp. 645; Ghee v. Gas. Co., 158 N. Y. 510, 53 N. E. 692.

My understanding of the foregoing provisions leads me to conclude that the administrative officers and administrative departments of the municipality of the city of New York have not the power to acquire a supply of water, and furnish it to the inhabitants, without authority, conferred by previous legislative enactment for that purpose, by the municipal assembly. This power is vested in the municipal assembly by direct grant from the legislature of this state. Chapter 378, Laws 1897 (Greater New York Charter). The power conferred upon the commissioner of water supply is bestowed in direct subordination to the higher power vested in the municipal assembly. Moreover, the acquisition of an additional water supply calls for the expenditure of money, which cannot lawfully be done without previous permissive legislative action on that subject by the municipal assembly. It must be said that the municipal assembly has, by the express terms of the charter, exclusive jurisdiction over both of these subjects, which can only be exercised as directed by the grant. Sections 1, 42, 169, 176, 178, 181, 187, 226, 479 et seq. of the Greater New York

charter. This grant of legislative power is not diminished or modi-
fied by any other provision of law. The duty therefore rests with
the municipal assembly to exercise this power to acquire an addi-
tional water supply, and provide for its distribution, by the enact-
ment of essential laws for that purpose.

Let us now inquire what has transpired to arouse the appre-
hensions of the plaintiff, and induce its officers to believe that there
is imminent danger of its sustaining grievous and irreparable in-
jury, and that it needs the protection of a court of equity. The
principal grievance urged here is the alleged presumption of the
board of public improvements to authorize the commissioner of
water supply to execute the contract, and the declared or apparent
intention of Commissioner Dalton to execute the same. It appears
that, pursuant to the provisions of sections 469 and 472 of the
charter, the commissioner of water supply undertook to determine
the sources of water supply for the city of New York; that on
August 9, 1899, he gave notice to the board of public improvements
that on August 16, 1899, he would bring up the question of giving
assent to the making of a contract to the Ramapo Company for a
supply of water, and requested a full attendance. Commissioner
Dalton further testifies that the terms of the contract, as he was
advised by the corporation counsel, and understood and believed,
are matters to be dealt with in their details by the board of public
improvements, and that on August 16, 1899, in obedience to his
duties, and in good faith, he submitted the results of his investiga-
tion to the board of public improvements. The closing paragraph
of his report is as follows:

"I submit herewith, for approval by your board, a contract with the Ramapo
Water Company, on the basis of the company's proposal, and approved as to
form by the corporation counsel."

It appears from the uncontradicted testimony that not only was
no motion made in the board of public improvements on August
16, 1899, or at any other time, authorizing the commissioner of
water supply to execute the contract, nor was a motion made to
approve the contract. Upon the motion of President Holahan, the
matter was postponed for two weeks, to afford the members of the
board an opportunity to make such an investigation as they desired.
On August 30, 1899, the board of public improvements adopted the
following resolutions, viz.:

"Whereas, section 472 of the Greater New York charter confers authority
upon the commissioner of water supply, with the approval of the board of
public improvements, to select and to determine all sources of water supply
throughout the state that may be needed for the supply and distribution of
water in the city of New York; and whereas, said section further provides
for the acquisition by condemnation of any real estate or interest therein
that may be necessary in order to acquire the sole and exclusive property in
such source or sources of water supply, and to extinguish the water rights of
any person or corporation therein; and whereas, the expressed principles of
the present administration, when seeking the suffrage of the people of this
city, was that the municipality should own and control all public utilities
therein: Resolved, that it is not in the public interest, nor for the public
weal, neither is it necessary, that the city should contract with a private cor-
poration for its supply of water; that upon the expiration of the term of the

existing contracts for such purpose, proceedings should be taken to acquire the rights of the persons or corporations holding or owning such rights, to the end that the municipality shall own its water system exclusively."

President Holahan and Commissioner Dalton both testify that the matter of the proposed contract was never before the board in other than a preliminary shape, for such action in the premises as the good judgment of the members of the board should dictate. I am unable to see in this state of facts any sufficient ground to apprehend an injury to the estate of the city of New York by reason of the execution of an alleged illegal and improvident contract. The responsibility of watching the water supply and making provision for the present needs, and also "ample reserve for contingencies and future demands," rests upon the commissioner of water supply. When, in his judgment, an increase of water supply seems to be demanded, it is his duty to start investigations, and ascertain the sources from which additional water can be obtained. It is not expected that some individual or committee of the municipal assembly will discover the necessity for an additional water supply, and initiate and first bring to the attention of that body a plan for procuring the same. The charter imposes this duty, as I have said, upon the commissioner of water supply. Section 472 of the charter provides that "the commissioners of water supply, with the approval of the board of public improvements, shall have power, throughout the state of New York, to select and to determine all sources of water supply that may be needed for the supply of the public water works of said city, and for the supply and distribution of water in said city."

Following the foregoing construction of the charter, and assuming that the order of procedure in obtaining an additional supply of water for the city of New York is as plaintiff claims, and that no binding contract can be entered into without the authority of the legislative department of the city government, to wit, the municipal assembly, no good ground for the injunction is here made out. So far as appears from the contents of the papers before me, the board of public improvements and Commissioner Dalton were lawfully proceeding in the matter of obtaining additional water supply, in accordance with the provisions of the Greater New York charter. It cannot be said that the execution of the contract was at any time imminent. Certainly there is no proof to support the claim that an execution of the contract is being undertaken by the defendants without due regard to the provisions of the charter, and in violation of law. It cannot, therefore, be held that a legal fraud is attempted. For the reasons above stated, and since it does not appear that there is imminent danger of plaintiff's rights being violated, the motion to continue the injunction should be denied, and the preliminary injunction dissolved, with costs. Settle order on notice. See, also, opinion in Keator v. Dalton (handed down this day) 62 N. Y. Supp. 878.

Motion denied, and preliminary injunction dissolved, with costs.