(29 Misc. Rep. 692.)

## KEATOR v. DALTON et al.

(Supreme Court, Special Term, New York County. December, 1899.)

1. MUNICIPAL CORPORATIONS—CONTRACT FOR WATER SUPPLY—INJUNCTIONS.

The allegation in a complaint against the officers of a municipal corpora-
tion, upon information and belief, that promoters and persons interested
in a certain water company, and others, have confederated and conspired
to cheat and defraud the city by means of a proposed contract with said
water company, is insufficient, without evidence disclosing the sources of
the information or of the grounds of belief, or of the names of the persons
charged with the conspiracy, to entitle a taxpayer to a temporary injunc-
tion restraining the execution of the contract.

2. SAME—POWERS OF CITY OFFICERS.

The power to procure additional water supply for the city of New York,
and that of raising funds to pay for it, rest exclusively in the municipal
assembly, and a contract for water supply can only become operative by
an ordinance or resolution of the assembly passed for that purpose.

3. SAME.

Action by Charles E. Keator against William Dalton, as commis-
sioner of water supply of the city of New York, and others, to re-
strain the execution of a contract for water supply. Motion denied.

Delos McCurdy, for plaintiff.

Hoadly, Lauterbach & Johnson (Edward Lauterbach, William
C. Trull, C. M. Ingraham, Henry L. Scheuerman, and Herbert R.
Limburger, of counsel), for defendant Ramapo Water Co.

John Whalen (Charles Blandy and Charles A. O'Neil, of counsel),
for defendants Dalton et al.

GILDERSLEEVE, J. The plaintiff is suing as a taxpayer, and
makes this motion to continue pendente lite a preliminary injunc-
tion, enjoining and restraining the defendant William Dalton, as
commissioner of water supply of the city of New York, from exe-
cuting, and the board of public improvements of said city from
voting to authorize the execution of, a certain contract, specified in
the complaint, or any contract whatever, with the defendant the

Ramapo Water Company for supplying water to the city of New York, and also restraining the said Ramapo Water Company from entering into any contract for water supply with the city of New York. It is the plaintiff's claim that Commissioner Dalton, on behalf of the city, has prepared a contract with the Ramapo Water Company for supplying the city with water at an exorbitant price, although no necessity exists therefor; that the board of public improvements is about to authorize and approve said contract, and that said Dalton will immediately thereafter put said contract into execution, to the detriment of the city's interests and in fraud of its rights; and that said contract is illegal, as it has never been approved or authorized by the municipal assembly. The complaint alleges that Commissioner Dalton is without power or authority to make the contract in question, with or without the consent of the board of public improvements; that no appropriation has been made by the board of estimate and apportionment; that there is no appropriation or fund otherwise applicable; that the comptroller has not indorsed on said contract his certificate, nor does he intend to do so; and that the contract is wholly unnecessary, improvident, and wasteful, because of the Croton water system. The plaintiff further alleges, on information and belief, that promoters and persons interested in the Ramapo Water Company and certain persons in the city of New York confederated and conspired to cheat and defraud the said city by means of this contract for a water supply, to be paid for at an extravagant price, and that said contract has not been acted upon by the board of estimate and apportionment, nor by the municipal assembly.

It appears to be conceded that neither the municipal assembly nor the board of estimate and apportionment has yet acted upon the contract. What has the commissioner of water supply done in the matter under consideration, and what conditions existed at the time he took the steps which are here the subject of inquiry? The claim of the defendants, that there has been a great scarcity of water to meet the demands of this large city is fully supported by the evidence. This is especially true of the boroughs of Kings, Queens, and Richmond. That this condition has existed for years is established by the records and reports of the commissioner of water supply, and by the affidavits and the statements contained in the collated matter submitted by hundreds of merchants and prominent citizens with their petition to the board of public improvements. There is evidence of the defects of the present system as far back as 1883. Commissioner Dalton affirms—and his statements are not discredited by any evidence before me—that, when he took charge of the department of water supply, he ascertained the duties of the office, and that he has performed them as he understood them, according to his best judgment; and he reached the conclusion that it was his duty, as the head of the department of water supply, to maintain the quality and supply of water up to the standard of the present needs of the people, and maintain that quality and that supply with ample reserve for contingencies and future demands, having regard to the growth of the city of New

York and the increase of the population. Having in view the provisions of the charter (chapter 378, Laws 1897), no other sensible conclusion could very well have been reached. By section 469 of the charter it is provided that the commissioner of water supply shall have cognizance and control of maintaining "the quality of the water supply, and of the investigation for, and the construction of, all work necessary to deliver the proper and required quantity of water, with ample reserve for contingencies and future demands." Section 472 provides as follows:

"The commissioner of water supply, with the approval of the board of public improvements, shall have power throughout the state of New York to select and determine all sources of water supply that may be needed for the supply of the public water works of said city, and for the supply and distribution of water in said city."

In taking cognizance of this vast subject, Commissioner Dalton endeavored to deal not only with the immediate environment of Manhattan Island and New York City as it existed before consolidation, but to discharge his obligations, as he understood them, in respect to the outlying portions of the city which now form a part of the Greater New York. Whatever may be the true construction of the charter, on the question of power, it cannot be said to be contemplated that some individual or committee of the municipal assembly should undertake to ascertain the necessity for an additional water supply, and initiate, and first bring to the attention of that body, a plan for procuring the same. The charter imposes this duty upon the commissioner of water supply. Accordingly Commissioner Dalton took the initiative in securing an additional water supply, and started an investigation, with the aid of competent engineers and the president of the board of public improvements. Having pursued this investigation in the manner stated for upwards of a year, Commissioner Dalton on August 9, 1899, at a meeting of the board of public improvements, gave notice of an intention to bring up at the next meeting, on August 16th, the question of giving assent to the making of a contract with the Ramapo Water Company for the supply of water, and requested a full attendance. On August 16th he presented his report to the board of public improvements. The official minutes of the meeting show that no action was at that time taken on the report, except to adjourn its consideration for two weeks, pending a report from the comptroller. On August 30th, the adjourned day, the board of public improvements adopted a resolution, as follows:

"Resolved, that it is not in the public interest, nor for the public weal, neither is it necessary, that the city should contract with a private corporation for its water supply."

On August 31st, the day following the foregoing action by the board of public improvements, the temporary injunction herein was granted, restraining Commissioner Dalton "from making or attempting to make, sign, or in any wise enter into, the proposed contract, Exhibit A, annexed to the complaint herein, or any contract whatever, with the Ramapo Water Company, for supplying water to the city of New York, or its whereabouts," and also enjoining and re-

straining "the said defendant, the city of New York, from making or signing or entering into any such contract," and also enjoining and restraining "the defendant the Ramapo Water Company from making, signing, or entering into any such contract," and also enjoining and restraining "the said board of public improvements, and each and every member thereof, from authorizing, approving, or assenting to, or voting to authorize, approve, and assent to, the execution of said proposed contract, or any contract whatever, with the defendant the Ramapo Water Company."

Upon the allegations and facts above set forth, the court is now asked to continue this preliminary injunction against the commissioner of water supply and the other defendants pending the trial of the action. The allegations that promoters and persons interested in the Ramapo Water Company and certain persons in the city of New York have confederated and conspired to cheat and defraud the city by means of the proposed contract is, as we have seen, made upon information and belief. I am unable to find in the moving papers a particle of evidence disclosing the source of the information or the ground of belief. The plaintiff, if he knew, very carefully concealed, the names of the persons who he says are promoters of, and interested in, the Ramapo Water Company. He is equally silent as to the names of the persons in the city of New York whom he charges with confederating and conspiring with said promoters to cheat and defraud the city. In the large volume of papers handed up, there is absolutely no evidence to support this charge. It is not suggested that any one authorized to represent the Ramapo Water Company was a party to the alleged conspiracy, nor that any of the defendants was such a party. The facts constituting the fraud, the acts done in pursuance of the conspiracy, and the names of the conspirators are all left to surmise and conjecture. Such a form of allegation is entirely insufficient and useless, and may well be disregarded. Kay v. Whittaker, 44 N. Y. 565; Seidman v. Geib (Com. Pl.) 11 N. Y. Supp. 705; Cohn v. Goldman, 76 N. Y. 284; Wood v. Amory, 105 N. Y. 278, 11 N. E. 636. But the practical abandonment by the plaintiff of the charge of conspiracy and fraud does not altogether dispose of this motion. While the plaintiff manifestly concedes that without fraud, which will result in waste, this action cannot be sustained, he seeks to meet this requirement by claiming legal fraud, which he asserts arises from the attempt of the commissioner of water supply to commit an illegal act by executing the proposed contract without the authority of the municipal assembly. It is the contention of the plaintiff that Commissioner Dalton's duty in the matter is purely administrative, and that he has no power, either with or without the consent of the board of public improvements, to enter into a contract that will bind the city. The decision of the question as to where the charter has placed the power for providing an additional water supply required a construction of the several provisions of the charter defining the powers and functions of the various departments constituting the municipal government. This subject is fully discussed in the opinion in Publishing Co. v. Holahan (handed down

herewith) 29 Misc. Rep. 684, 62 N. Y. Supp. 872. In my judgment, the power to procure additional water supply, and the power to raise funds to pay for it, is possessed exclusively by the municipal assembly, and can only become operative by ordinance or resolution passed for those purposes by said assembly. If, in behalf of the city, a contract for an additional water supply is made, it will not be denied that at some stage of the proceedings the duty of executing the contract will devolve upon the commissioner of water supply. Assuming that it appears in the papers before me that, had the board of public improvements approved of the proposed contract, the commissioner of water supply would have executed it, no case for injunction relief is here made out, for the reason that it is not shown that any injury to, or waste of, the city's assets would be imminent. No harm can result, because other acts, namely, the approval by the comptroller and the appropriation by the board of estimate and apportionment, would have to take place before the contract could become a binding obligation upon the city. Admitting the contention of the plaintiff, the commissioner of water supply, by now signing the contract, could only be said to be acting prematurely, and not in the order the legislature contemplated that the departments of the city government should proceed. There is no evidence to sustain the assertion that Commissioner Dalton intended to procure, or now contemplates procuring, an additional water supply, otherwise than in accordance with the law. The object of an injunction is preventive, and it is intended to prohibit the commission of a wrong. In seeking a preliminary injunction, the complaint must allege that injurious acts are about to be done, and it must be shown that there is imminent and actually impending danger of the plaintiff's rights being violated. Facts must be stated showing that the plaintiff's apprehensions of injury in the future are well founded. The foregoing propositions are elementary, and require no citation of authorities. Where, in the voluminous papers before me, is there any evidence of imminent danger of the plaintiff's rights being violated? If any wrong is to come to him, and he is to suffer at all from any acts he seeks to prevent, it is the execution of the proposed contract by Commissioner Dalton. The allegation of the complaint that the contract is a wasteful one is not the statement of a fact. No facts are stated showing ground for apprehension of future injury. The contract is before the court, and a careful perusal shows it to be quite harmless. It is a simple option. By its terms the Ramapo Water Company is to supply water, provided the city needs it. If the city does not need the water, she need not take it. It really confers upon the city a privilege of which she may avail herself if she wishes to do so. No waste of the city's estate is likely to result from such a contract. The contract itself refutes such an allegation. Moreover, the contract in question is not the original contract tendered by the Ramapo Water Company, and it appears by the affidavit of the president of the company that "the Ramapo Water Company has never offered to furnish and supply water to the city of New York upon the terms contained in said proposed contract, nor would said company accept,

nor any officer of said company advise the acceptance of, said contract." We have already seen that, the day before the preliminary injunction herein was granted, the board of public improvements resolved that it was not in the public interest, nor was it necessary, that the city should contract with a private corporation for its supply of water. In view of these facts, how can it be said that the execution of the contract was at any time imminent? Again, should the commissioner of water supply and the board of public improvements do what this action is brought to prevent in respect of the contract, no injury to the city's estate is imminent. Before it could become a binding obligation upon the city, it would have to be accepted and executed by the Ramapo Water Company. Beyond the positive statement that the company would not accept the contract is the strong improbability of any company entering into an agreement like the one proposed, where mutuality seems to be entirely wanting. It must be noted that the complaint contains no averment that the Ramapo Water Company will accept or execute the contract. In the absence of such an allegation, the complaint does not state facts sufficient to constitute a cause of action. Again, neither the approval of the contract by the board of public improvements, nor the signing of the contract by the commissioner of water supply, will create any obligation upon the part of the city. See sections 149 and 1541 of the charter. The comptroller's indorsement can alone give validity and effect to the contract. The comptroller states in his affidavit that this indorsement "has not and will not be made upon the contract." The acts sought to be restrained cannot, if committed, constitute injury to the assets of the city, within the meaning of those terms, as contained in the taxpayers' act, under which this action is brought. Furthermore, there is no evidence to support the claim that any of the administrative officers of the city, defendants herein, are attempting the commission of an illegal act. For the foregoing reasons, the motion to continue the injunction should be denied, and the preliminary injunction dissolved, with costs. Settle order on notice. See opinion in Publishing Co. v. Holahan, 29 Misc. Rep. 684, 62 N. Y. Supp. 872.

Motion denied, and preliminary injunction dissolved, with costs.